# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Geraldine Soat Brown | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9418 | **DATE** | 1/29/2003 |
| **CASE TITLE** | Mayfield vs. Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set out in the Memorandum Opinion and Order, the defendant's motion for summary judgment [17-1] is denied, the plaintiff's motion for summary judgment [13-1] is granted, and the case is remanded to the Commissioner of Social Security for further proceedings consistent with the Opinion. Commissioner's counsel Kathryn A. Beverly is hereby ordered to appear in person before this Court on Friday, February 7, 2003 at 10:30 a.m. Enter Memorandum Opinion and Order. *Geraldine Soat Brown*

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | **JAN 30 2003** | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 1/29/2003 | 20 |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| MW | courtroom deputy's initials | | MW mailing deputy initials | |

Date/time received in central Clerk's Office

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CLYDIE MAYFIELD, on behalf of )
DE SEAN HOLLAND, )
         Plaintiff, )     Cause No. 01 C 9418
         )
v. )     Magistrate Judge Geraldine Soat Brown
         )
JO ANNE BARNHART, )
        Defendant. )
         )

### MEMORANDUM OPINION AND ORDER

    Plaintiff DeSean Holland, through his grandmother and guardian Clydie Mayfield, filed a

claim for Social Security disability benefits in 1998. (R. 53.)[1] The Commissioner of the Social

Security Administration ("SSA") denied Plaintiff's application for Disability Benefits. (R. 29.)

Plaintiff requested and received a hearing before an administrative law judge ("ALJ") who rendered

an unfavorable decision. (R. 16.) After the Appeals Council of the SSA's Office of Hearings and

Appeals ("Appeals Council") declined Plaintiff's request for review (R. 4), Plaintiff filed the present

action for judicial review pursuant to 42 U.S.C. § 405(g). [Dkt# 1.] The parties have filed cross-

motions for summary judgment under Fed. R. Civ. P. 56 [dkt## 13, 17], and have consented to the

jurisdiction of a magistrate judge under 28 U.S.C. § 636(c)(1). [Dkt# 8, 9.] Thus, the decision of

this court constitutes the final ruling on the cross-motions. For the reasons set forth below,

Defendant's motion for summary judgment is DENIED, Plaintiff's motion for summary judgment

---

[1] As used herein, "Plaintiff" refers to DeSean Holland, rather than his grandmother. "R"
refers to the certified record of proceedings, evidentiary documents, and administrative hearing
transcript prepared by the Social Security Administration's Office of Hearings and Appeals pursuant
to 42 U.S.C. § 405(g).



is GRANTED, and the case is remanded back to the Commissioner for further proceedings.

## FACTUAL BACKGROUND

Plaintiff is a child who suffers from asthma and behavioral problems. At the time of the hearing before the ALJ in February 1999, Plaintiff was nine years old. (R. 201.) He has been hospitalized for treatment of his asthma, in conjunction with other symptoms, on at least four occasions. (R. 130-155.) His first documented hospitalization was for six days in 1991, just prior to his second birthday. (R. 131.) He was brought to the emergency room complaining of coughing and wheezing. (*Id.*) He was diagnosed with pneumonia and asthma[2] by one doctor, and asthmatic bronchitis and mild dehydration by another. (R. 131-133.) Plaintiff's wheeze persisted throughout his stay at the hospital and he was discharged with a "trace" wheeze. (R. 131.) Plaintiff's second hospitalization was in 1993. (R. 134.) He was brought to the emergency room with wheezing and shortness of breath. (R. 135.) He stayed overnight and was diagnosed with status asthmaticus. (*Id.*) Plaintiff's third hospitalization was in 1995. (R. 142.) He was again brought to the emergency room with wheezing and severe shortness of breath and was hospitalized for four days. (R. 143.) He was diagnosed with status asthmaticus with impending respiratory failure and a history of chronic asthma. (*Id.*) Plaintiff was treated with intravenous steroids and antibiotics, and discharged in stable condition. (*Id.*) Plaintiff's most recent hospitalization documented in the evidence was in 1996 when he was admitted from the emergency room with severe asthma and treated for eight days. (R. 146-148.) Plaintiff's medical records allude to additional hospitalizations but these are not reflected

---

[2] Asthma is an inflammatory disease of the lungs characterized by reversible airway obstruction. *Stedman's Medical Dictionary* ("*Stedman's*") 158 (27th ed., Lippincott Williams Wilkins 2000).

2

in the record. (R. 144.)

In addition to his hospitalizations, Plaintiff has also been seen in hospital emergency rooms on three additional occasions. In 1995, Plaintiff was twice admitted to the emergency room with asthma. (R. 136-137, 139.) In 1997, Plaintiff was seen in the emergency room with wheezes. (R. 157.)

Dr. Janice Krakora-Looby has been treating Plaintiff since December, 1996. (R. 168.) In her response to a Bureau of Disability Determinations questionnaire, Dr. Krakora-Looby characterized Plaintiff's symptoms as episodic coughing and wheezing accompanied by acute exacerbations. (R. 168.) She noted that Plaintiff's asthma is aggravated by humidity, exercise and respiratory infections. (*Id.*) She reported that he has responded well to medication and, as to restrictions on activity, she listed "none." (R. 169.)

In 1996 and part of 1997, Plaintiff was seen by Dr. Gilbert Lanoff who treated Plaintiff with weekly allergy shots. (R. 91.) According to Plaintiff's grandmother, this treatment was discontinued when Plaintiff's grandmother took legal custody of Plaintiff and his insurance changed. (R. 221.)

Over the course of 1998 and 1999 Plaintiff was prescribed an Albuterol inhaler,[3] an

---

[3] Albuterol is a bronchodialator used for the prevention and relief of bronchospasms. *Physician's Desk Reference* ("*PDR*") 3142-3143 (56th ed., Medical Economics Company 2002).

3

Azmacort inhaler,[4] an Intal inhaler[5] and a Vanceril inhaler.[6] (R. 108-110.) He was also prescribed Albuterol solution, Singulair tablets[7], Prednisolone syrup[8] and Cromolyn solution. (*Id.*) Plaintiff's pharmacy records indicate six prescriptions in 1998 and 1999 for the corticosteroids Prednisolone and Prelone. (*Id.*) Plaintiff's grandmother testified that these medications were prescribed for five-day courses of treatment. (R. 215.) She also testified that she had treated Plaintiff twice in 1998 and 1999 with five day courses of Prednisolone on her own initiative, relying on an older prescription and leftover medication. (R. 216.) She testified that she undertook this treatment as she could not take more time off work and had learned to anticipate the doctor's treatment. (*Id.*) In addition, Dr. Krakora-Looby indicated that on one occasion Plaintiff received oral corticosteroids in her office as a form of emergency therapy, and her records also reflect two five-day courses of Prelone. (R. 168, 181, 183.)

Plaintiff's grandmother testified that she treats Plaintiff with a nebulizer[9] four times a day and gets up every night to treat him. (R. 212.) She observed that his treatment makes him "antsy"

---

[4] Azmacort is a corticosteroid used for the prophylactic treatment of asthma. *Id.* at 728. A corticosteroid is a steroid produced by the adrenal cortex. *Stedman's* at 416.

[5] Intal contains cromolyn sodium and is used to prevent exercise induced asthma. Ken Flieger, *Controlling Asthma*, Vol. 30 No. 90, FDA Consumer Magazine (November 1996) (reprinted with updates June 2000), <www.fda.gov/fdac/features/996-asth.html>.

[6] Vanceril is an antiinflamitory corticosteroid indicated for the maintenance treatment of asthma. *PDR* at 3165.

[7] Singulair is indicated for the chronic treatment of asthma. *Id.* at 2183.

[8] Prelone is a Prednisolone syrup which contains an adrenocortical steroid used for control of severe or incapacitating allergic conditions. *Id.* at 2273-2274.

[9] A nebulizer is a device used to reduce liquid medication to fine particles for delivery deep into the respiratory tract. *Stedman's* at 1184.

and "touchy." (R. 217.) She stated that becoming upset, any type of play, changes in the weather, cigarette smoke and the environment outside of the home can all trigger Plaintiff's asthma. (R. 213.) According to his grandmother, Plaintiff is unable to participate in sleepovers, birthday parties and sports and spends most of his time inside the home. (R. 57.) She also testified that he is never free of symptoms. (R. 213.)

Plaintiff testified that every time he runs for a while he gets a wheeze that is not alleviated by treatment. (R. 204.) He also testified that he sometimes gets wheezes even without exercise and he often wakes up in the middle of the night because of wheezing or coughing. (R. 207-208.) The onset of a wheeze does not prevent Plaintiff from continuing to play, (R. 204), and he participates in physical education classes at school. (R. 114.) However he must use his inhaler beforehand. (R. 182.)

Plaintiff was evaluated in 1998 by two consultive physicians from the Bureau of Disability Determination Services ("DDS"), Dr. Ference and Dr. Pardo, who completed Childhood Disability Evaluation Forms. Both physicians found that Plaintiff's asthma was severe, but did not meet or equal the severity of a listed impairment. (R. 163, 171.) They both also found that Plaintiff had marked limitation in his motor functioning. (R. 165, 173.) Neither DDS doctor indicated that Plaintiff evidenced limitation in his social skills or his concentration, persistence and pace. (Id.)

Plaintiff has difficulties at school. He repeated the first grade, and for some time was meeting weekly with the school social worker. (R. 99, 116.) In response to a School Activities Questionnaire, his first grade teacher reported that he occasionally bullies other students, often does not pay attention to instructions and can be disruptive in class. (R. 127.) She also reported that he will occasionally crawl or cry when he cannot get his way. (R. 128.) She described him as a needy

5

child who wants to be the center of attention. (R. 129.) She reported that she has had some success with the use of behavioral modification techniques. (R. 100.) The school social worker reported similar behavior. (R. 118-119.) His second grade teacher stated that he is growing in his basic skills areas and takes pride in his work but still requires significant guidance and supervision. (R. 115.) Plaintiff's second grade report card reflects a satisfactory level of effort in almost all of his classes. (R. 113-114.) Plaintiff's grandmother has observed that Plaintiff's teacher is frustrated by his disruptive behavior. (R. 217.)

## STANDARD OF REVIEW

The Social Security Act provides for limited judicial review of a final decision of the Commissioner (effectively that of the ALJ where, as here, the Appeals Council has denied the applicant's request for review). Where the ALJ commits an error of law, "reversal is required without regard to the volume of the evidence in support of the factual findings." *Imani v. Heckler*, 797 F.2d 508, 510 (7th Cir. 1986). With respect to the ALJ's conclusions of fact, the reviewing court's role is limited. There the role of the district court is only to determine whether the decision of the ALJ is supported by substantial evidence in the record. *Wolfe v. Shalala*, 997 F.2d 321, 322 (7th Cir. 1993). In reviewing the Commissioner's decision, the court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994); *Brown v. Chater*, 913 F. Supp. 1210, 1213-14 (N.D. Ill. 1996)(Bucklo, J.). Thus, the court does "not substitute [its] own judgment for that of the ALJ." *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). Rather, the court must affirm a decision if it is supported by substantial evidence and the ALJ has made no error of law. *Herr v. Sullivan*, 912

6

F.2d 178, 180 (7th Cir. 1990); *Edwards v. Sullivan*, 985 F.2d 334, 336-37 (7th Cir. 1993). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Luna v. Shalala*, 22 F.3d 687, 689 (7th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

When evaluating a disability claim the ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors his ultimate conclusion. *Herron*, 19 F.3d 329, 333. Where conflicting evidence allows reasonable minds to differ, the responsibility for resolving the conflict falls on the ALJ, not the court. *Herr*, 912 F.2d 178, 181; *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and to give greater weight to that which he finds more credible). Where there is a conflict between medical opinions, the ALJ may choose between those opinions but may not substitute his own lay opinion for that of the medical professionals. *Davis v. Chater*, 952 F. Supp. 561, 566 (N.D. Ill. 1996)(Keys, M.J.). A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).

Although the district court's role is limited to determining whether the ALJ's final decision is supported by substantial evidence and based upon proper legal criteria, this does not mean that the ALJ is entitled to unlimited judicial deference. In addition to relying on substantial evidence, the ALJ must articulate his analysis at some minimal level and state his reasons for accepting or rejecting "entire lines of evidence," although he need not evaluate in writing every piece of evidence in the record. *Herron*, 19 F.3d at 333. *See also Young v. Secretary of Health and Human Servs.*, 957

F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate his reason for rejecting evidence "within reasonable limits" in order to allow for meaningful appellate review); *Guercio v. Shalala*, No. 93 C 323, 1994 WL 66102, at *9 (N.D. Ill. March 3, 1994)(Marovich, J.)(ALJ need not spell out every step in his reasoning, provided he has given sufficient direction that the full course of his decision may be discerned) (citing *Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir. 1988)). An ALJ's opinion cannot contain conflicting factual determinations. *Smith v. Massanari*, No. 00-C-7504 2001 WL 936123 at *1-2 (N.D. Ill Aug. 16, 2001)(Shadur, J.).

## ALJ'S DECISION

Childhood disability claims are evaluated according to a three-step process. 20 C.F.R. § 416.924. Under this process the ALJ first determines if the claimant engaged in any substantial gainful activity. 20 C.F.R. § 416.924(b). At step two of the process the ALJ determines if the claimant suffered from a severe impairment. A severe impairment is an impairment that causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). At step three the ALJ determines if the claimant has an impairment that meets or is medically or functionally equal in severity to a listed impairment. 20 C.F.R. § 416.924(d).[10]

At step one, the ALJ noted that there was no evidence that the Plaintiff had ever worked. (R. 17.) At step two, the ALJ found that Plaintiff suffered from a severe impairment. (*Id.*) At step three the ALJ found that Plaintiff's asthma did not meet the requirements of a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.*) Section 103.02 of that Appendix is the listing for chronic

---

[10] Although certain changes were made to the rules between the time of the ALJ's decision and the present (*see* Discussion *below*), the three-step process set out in 20 C.F.R. § 416.924 was not substantively changed. 65 Fed. Reg. 54547, 54751 (Sept. 11, 2000).

pulmonary insufficiency. Section 103.03 is the listing for asthma.[11] Although the ALJ considered

Plaintiff's impairment with regard to Section 103.02(A) and Section 103.03 in general, she did not

---

[11] Section 103.03 provides:

103.03 Asthma. With:

A. FEV sub1 equal to or less than the value specified in table I of 103.02A; Or

B. Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention, occurring at least once every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks; Or

C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

1. Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or

2. Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period; Or

D. Growth impairment as described under the criteria in 100.00.

20 C.F.R. Pt. 404, Subpt. P, App. 1 §103.03.

consider Plaintiff's impairment in light of Section 103.03(C), which Plaintiff argues is specifically applicable.

The ALJ next considered whether Plaintiff's conditions were functionally equivalent to a listed impairment. Under the regulations in force at the time of the ALJ's decision, a claimant would be found to have functional limitations equivalent to a listed impairment if any of the following applied: (1) the claimant had an extreme limitation of one specific function or a limitation of a combination of specific functions that are the same as those in a listed impairment; (2) the claimant had extreme limitations in an area of development or functioning, or had marked limitations in two such areas; (3) the claimant had episodic impairments that produced the same disabling functional limitations as those of a listed impairment with similar criteria; and (4) the claimant had treatment that produced functional limitations the same as the disabling functional limitations of a listed impairment. 20 C.F.R. § 416.926a(b)(1)-(4) (1999). As discussed below, the interim rules that were in effect at the time of the ALJ's decision were changed in the final rules issued on September 11, 2000.

The ALJ found that Plaintiff did not have a functional limitation that is the same as any listed functional limitation. (R. 17-18.) The ALJ also found that neither Plaintiff's episodes of asthma nor his treatment produced a functional limitation equivalent to a listed functional limitation. (Id.) Finally, the ALJ found that Plaintiff did not suffer from marked or extreme limitations in any areas of development or functioning. (R. 20.)

At the time of the ALJ's decision, children in Plaintiff's age range were evaluated according to five areas of functioning: cognitive/communicative functioning, motor functioning, social functioning, personal functioning, and concentration, persistence or pace. 20 C.F.R. §

10

416.926a(c)(5)(iv) (effective until Sept. 11, 2000). The ALJ found that although Plaintiff had repeated the first grade there was no allegation or evidence of limitation in the area of cognitive/communicative functioning. (R. 19.) The ALJ also concluded that Plaintiff lacked marked limitation in his motor functioning. (*Id.*) In reaching that conclusion the ALJ did not address the findings of the two consulting DDS doctors who evaluated Plaintiff, both of whom found "marked" limitations in Plaintiff's motor functioning. (R. 19, 165, 173.) The ALJ next addressed Plaintiff's social functioning and, after discussing the testimony of Plaintiff, his grandmother, and reports written by Plaintiff's teachers, concluded that he had "less than marked" limitation in that area. (R. 20-21.) The ALJ found that there had been no allegation of limitations in the area of personal functioning. (R. 20.) In addressing Plaintiff's concentration, persistence and pace, the ALJ found that the reports completed by Plaintiff's school evidenced some degree of limitation, the evidence fell short of a finding of marked limitation. (*Id.*) In reaching this conclusion the ALJ did not discuss the Childhood Function Report submitted by Plaintiff's grandmother to the SSA. (R. 94-97.)

The ALJ stated that in reaching her conclusions, the ALJ found that "the claimant's subjective complaints of disabling symptoms and limitations were considered but are found not entirely credible for reasons discussed in this decision." (R. 22.) As a result of her findings, the ALJ held that Plaintiff was not disabled. (R. 22.)

## DISCUSSION

Plaintiff alleges that the ALJ erred in three respects. First, Plaintiff argues that the ALJ's erred in determining that Plaintiff's condition failed to meet the requirements for a listed impairment. Second, Plaintiff argues that the ALJ's determination of functional equivalence was not supported

11

by substantial evidence. Finally, Plaintiff argues that the ALJ violated SSA guidelines in making her credibility determinations. For the reasons set forth below, this court agrees with the Plaintiff on all three arguments. In addition, there is a threshold issue of which version of the SSA's rules for determining disability in children applies in this case.

## A. RULES APPLICABLE TO THIS APPEAL.

In August, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act (the "PRWORA," Pub. L. 104-193), which modified certain portions of the Social Security Act. Among other provisions, the PRWORA set forth a new standard for determining whether a child is disabled. *Hickman v. Apfel*, 187 F.3d 683, 685 n.2 (7th Cir. 1999); *Williams v. Apfel*, 179 F. 3d 1066, 1069 n.3 (7th Cir. 1999). In 1997, the SSA promulgated regulations making significant changes in the determination of childhood disability claims, in order to conform to the statutory standard under the PRWORA. 65 Fed. Reg. 54747 (Sept. 11, 2000). The 1997 regulations were interim final rules. *Id.* In September 2000, the SSA issued final rules. *Id.* The ALJ's decision was issued on August 26, 1999. (R. 22.) The interim rules were in effect at that time. The revised final rules became effective January 2, 2001. 65 Fed. Reg. 54747. Thus, the revised rules had become effective by the time of the Appeals Council's decision in October, 2001. (R. 4.) The Appeals Council stated that it applied the revised final rules in making its decision. *(Id.)*

Notwithstanding the application of the final rules by the Appeals Council, the Commissioner here suggests that the ALJ's decision should be reviewed in light of the rules as they existed at the time of the ALJ's decision, *i.e.*, the interim rules. (Def.'s Mem. Supp. Mot. Summ. J. at 6-7, 10 n.3, 11 n.5., 12 n.7.) The Commissioner does not analyze or discuss in any way how the ALJ's decision

12

would fare if the final rules applied. The Commissioner's brief suggests that this approach is supported by the SSA's statement in issuing the final rules:

> With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision.

65 Fed. Reg. 54747 at 54751, quoted in Def.'s Mem. Supp. Mot. Summ. J. at 6-7.

However, that argument was *rejected* in a decision by Magistrate Judge Levin issued on June 5, 2002, more than two months before the Commissioner filed her memorandum in this case on August 27, 2002. *Abrams v. Barnhart*, No. 01 C 8096, 2002 WL 1204954, *3-4 (N. D. Ill. June 5, 2002)(Levin, M.J.). The timeline in the *Abrams* case was almost identical to the timeline here. The ALJ's decision in *Abrams* was issued in July, 1999; the Appeals Council's decision was issued in August 2001. *Id.* at *3. In the *Abrams* case, as here, the Commissioner argued that the final rules do not significantly change the standards for childhood disability. *Id.* at *5. That argument was also rejected by Judge Levin, who concluded that the changes in the final rules (from the five areas to the six domains in the step three analysis) were significant and relevant to the issues of that case in considering whether the claimant's condition is functionally equivalent to the listings. *Id.* Judge Levin concluded, in remanding, that the court was not in a position to determine the impact of the evidence in light of the final rules. *Id.*

Counsel for the Commissioner fail to discuss the *Abrams* case in any way.[12] Counsel for

---

[12] It is troubling that the attorneys for the Commissioner, who knew, or in the exercise of professional responsibility should have known, that a position taken by the Commissioner on a matter of law had been rejected by a court of this District, failed to cite or even refer to the *Abrams* decision. *See* N.D.Ill. Loc. R. 83.53(3) ("In appearing in a professional capacity before a tribunal, a lawyer shall not: . . . . fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing

Plaintiff also does not refer to the *Abrams* case, but instead cites *Williams v. Apfel*, 179 F.3d 1066, 1068 n.3 (7th Cir. 1999) as supporting reviewing of the ALJ's decision in light of the interim rules. (Pl.'s Brief in Supp. Pl.'s Mot. Summ. J. at 3-4 n.1.) However, *Williams* is not on point here. The *Williams* case considered a decision rendered by an ALJ before the major changes enacted by the PRWORA significantly narrowed the standard to be used in determining whether a child is disabled. *Id.* at 1068 n.3. The court held that, because the plaintiff there had been properly determined by the ALJ to be not disabled under the broader pre-PRWORA standard, the plaintiff there would necessarily also be found to be not disabled under the PRWORA's more restrictive standard. In this case, the interim rules and the final rules were both issued by SSA to carry out the PRWORA. As indicated by Judge Levin in the *Abrams* case, the court is not in a position to determine the impact of the evidence when considered in light of the format of the final rules. *Abrams*, 2002 WL 1204954, *5. Furthermore, in *Williams*, the court determined that the plaintiff was properly denied benefits under the old standard. Here, as discussed below, the ALJ's decision cannot stand, and must be remanded in any event, not solely because of the change in the rules.

## B.    FAILURE TO EVALUATE THE EVIDENCE RELATING TO A LISTED IMPAIRMENT.

The ALJ's entire discussion of whether Plaintiff's condition meets the requirements for a listed impairment, consists of the following:

> Specifically, the claimant's asthma has not resulted in attacks occurring, despite prescribed treatment, as frequently as required by section 103.03, nor does the record reflect any pulmonary function studies with results equivalent to that required under

counsel"). The failure of Commissioner's counsel to disclose the *Abrams* case appears to violate that Rule.

the tables in section 103.02(a).

(R. 17.)

It is apparent from this discussion that the ALJ improperly read the "frequency of attacks" requirement in section 103.03(B) as a requirement of all subsections. However, that reading is contrary to the express terms of section 103.03. Section 103.03 is written in the disjunctive, not the conjunctive. (*See* text of section 103.03 in note 11 above.) A condition of asthma accompanied by evidence of the requirements of section 103.03(C) does not also have to meet the frequency of attacks requirement of 103.03(B). In light of the expressly disjunctive terms of section 103.03, it was error for the ALJ to fail to consider whether Plaintiff's condition met the requirements of each of the subsections for which there was any evidence in the record.

Plaintiff argues that he meets the requirement of section 103.03(C), requiring "[p]ersistent low grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following: . . . (2) short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §103.03(C)(2). Plaintiff argues that given this evidence it was a reversible error for the ALJ to fail to evaluate his claim in light of it.

The Commissioner cites *Henderson v. Apfel*, 179 F.3d 507 (7th Cir. 1999), which upheld the decision of an ALJ although the ALJ failed to refer to every section of a listing. In *Henderson*, however, there was uncontested evidence that the plaintiff did not meet the listing requirements that had not been explicitly addressed by the ALJ. *Id.* at 514. In this case, however, Plaintiff presented significant evidence that he in fact met the requirements of section 103.03(C). In the hearing before the ALJ, Plaintiff and Plaintiff's grandmother both testified regarding Plaintiff's symptoms and

15

treatment regime. (R. 207-208; 211-213.) Plaintiff's grandmother testified that Plaintiff is never symptom free and is treated daily and nightly with sympathomimetic bronchodilators. (R. 212.) The record also contains evidence regarding Plaintiff's six prescription for corticosteroids in 1998 and 1999. (R. 108-110.) Plaintiffs grandmother testified that he has received five-day courses of oral corticosteroids. (R. 215.) Plaintiffs medical records further document two short courses of corticosteroids. (R. 181, 183.) On the other hand, the evaluation forms completed by the DDS doctors found that Plaintiff did not meet an impairment listing. (R. 163, 171.) However, the ALJ did not discuss that evidence either. The ALJ must consider all relevant evidence and state his or her reasons for rejecting "entire lines of evidence." *Herron*, 19 F.3d at 333.

Contrary to the position advanced by the government in the oral argument before this court, the court cannot find that the ALJ has made "implicit" findings. In *Steele v. Barnhart*, 290, F.3d 936 (7th Cir. 2002), the Seventh Circuit observed that "regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ." *Steele*, 290 F.3d at 941. Given the evidence in the record supporting a finding of a listed impairment with respect to section 103.03(C), it was reversible error for the ALJ to have failed to state expressly her reasons for finding that Plaintiff's condition did not meet that listing.

**C.      ERROR IN FINDING THAT PLAINTIFF'S CONDITION WAS NOT THE FUNCTIONAL EQUIVALENT OF A LISTED IMPAIRMENT.**

As discussed above, the ALJ, applying the interim rules, evaluated whether Plaintiff's impairment is the functional equivalent of a listed impairment by considering five areas of

functioning: cognitive/communicative functioning, motor functioning, personal functioning, social functioning, and concentration, persistence and pace. 20 C.F.R. § 416.926a(c)(5)(iv) (effective until Sept. 11, 2000). Under the final rules, children's impairments are evaluated according to six domains. 20 C.F.R. § 416.926a(b) (2001). Under the final rules as well as the interim rules, a child's impairment will be considered the functional equivalent of a listed impairment if the child has two "marked" limitations in one area (or domain) or one "extreme" limitation in one area (or domain). The ALJ found that Plaintiff had no marked limitations in any area. (R. 21-22.) Plaintiff argues that he suffers from "marked limitations" as defined by § 416.926 in the areas of motor skills, social functioning and concentration, persistence and pace. Plaintiff argues that the ALJ's decision that he did not have a functional impairment equal in severity to a listed impairment was unsupported by substantial evidence.

As a preliminary matter, Plaintiff argues that in making her finding that Plaintiff had no marked limitations, the ALJ failed to consider the reports of the DDS physicians as required by SSR 96-6p and 20 C.F.R. § 416.927(f)(2). (Pl.'s Br. at 10.) Both Dr. Ference and Dr. Pardo found that Plaintiff suffered from "marked" motor skills limitations. (R. 165, 173.) The ALJ does not mention those reports in her opinion, finding that Plaintiff did not have marked limitations in any area, including motor skills. (R. 19.) SSR 96-6p states that "[a]dministrative law judges and the Appeals Council may not ignore these opinions [by DDS physicians] and must explain the weight given to these opinions in their decisions." The ALJ is required to comply with the rulings of the SSA. 20 C.F.R. § 402.35(b). Moreover, the Code of Federal Regulations states that ALJ's "must consider findings of State agency medical and psychological consultants or other program physicians . . . ." 20 C.F.R. § 416.927(f)(2)(i). In this case the ALJ failed to comply with the regulations.

The Commissioner's response inexplicably fails to discuss SSR 96-6p or 20 C.F.R. § 416.927

17

(f)(2) in any way. Instead, the Commissioner argues, in footnote, that "the ALJ's decision not to adopt [the] opinions [of the state agency physicians] was reasonable." (Def.'s Mem. at 10 n.4.) However, the ALJ's decision gives no indication that the ALJ's even considered those opinions. That was clearly contrary to the to the regulations which require that the ALJ "explain" the weight given to the opinions by the DDS physicians. The ALJ's failure to discuss the DDS physicians' findings was error as a matter of law.

Because this case must be remanded and upon remand the ALJ will consider the evidence as it relates to the six domains created by the final rules, it is unnecessary for this decision also to consider whether ALJ's decision as to the other four areas of functioning is supported by substantial evidence.

## D. CREDIBILITY DETERMINATION.

The ALJ found Plaintiff's statements regarding his symptoms and abilities not credible without an explanation of that finding. She wrote, "The claimants's subjective complaints of disabling symptoms and limitations were considered but are found not entirely creditable for the reasons discussed in this decision." (R. 22.) She made no finding regarding Plaintiff's grandmother's credibility although Plaintiff's grandmother testified at length in the hearing.

SSR 96-7p requires that a credibility finding be supported with specific reasons. SSR 96-7p states that

> [t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p specifically disapproves of blanket statements. It states that "[i]t is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been

18

considered' or that 'the allegations are (or are not) credible.'" *Id.* SSR 96-7 further requires that the ALJ "carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements." *Id.* The Seventh Circuit has recently reiterated the importance of the ALJ's articulation of the reasons behind her credibility determination. *Brindisi v. Barnhart*, __ F.3d __, 2003 WL 61308, No. 02 -1365 (7th Cir., January 8, 2003).

An ALJ's credibility determination "is afforded special deference because the ALJ is in the best position to see and hear the witness and determine credibility." *Shrameck v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000). However, if after giving the ALJ's opinion a "commonsensical" reading rather than a "nitpicking" one, there are gaps in the bridge between the evidence and the result, the ALJ's determination is not to be upheld. *Id.* at 811. In this case the ALJ failed to comply with SSR 96-7p and the requirement to build a bridge between the evidence and her conclusion. It is not clear how the ALJ arrived at her credibility determinations. She made no specific finding at all regarding Plaintiff's grandmother and an unsupported finding regarding Plaintiff. The ALJ's unsupported conclusion is insufficient under the requirements of the regulations, and case law interpreting those requirements.

## CONCLUSION

The ALJ erred as a matter of law in failing to consider whether Plaintiff met the listing requirements for asthma. The ALJ's analysis of whether Plaintiff's impairment is the functional equivalent of a listed impairment failed to consider the reports of the DDS physicians as required by SSR 96-6p and 20 C.F.R. § 416.927(f)(2)(i). On remand, the ALJ shall determine whether Plaintiff's impairment is the functional equivalent of a listed impairment in light of the final rules effective January 2, 2001. Finally, the ALJ's credibility determination was insufficient under SSR

96-7p. Plaintiff's motion for summary judgment [dkt#13] is GRANTED. Defendant's motion for summary judgment [dkt# 17] is DENIED and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

*Geraldine Soat Brown*
**GERALDINE SOAT BROWN**
**United States Magistrate Judge**

**DATED:  January 29, 2003**